UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BOB L. WOODS, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 1:17CV00047 SNLJ |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Bob L. Woods, a person in federal custody. On March 26, 2015, Woods was found guilty of the offenses of Possession with Intent to Distribute Methamphetamine, Felon in Possession of a Firearm and Possession of a Firearm in Futherance of a Drug Crime and, on August 18, 2015, this Court sentenced Woods to the Bureau of Prisons for a term of 120 months on Counts 1 and 2 to run concurrent and 60 months on Count 3, a sentence within the sentencing guideline range. Woods' § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I. PROCEDURAL HISTORY

On April 9, 2014, during the noon hour, Portageville, Missouri police officer Sergeant Austin DeLisle, who had been eating at McDonalds' with other officers, noticed Bob L. Woods driving a grey Cadillac. The car had dark tinted windows, and pulled into

the drive through lane of the restaurant. (TRS MSE, p. 12)[1] Sgt. DeLisle, who had some limited prior contact with Woods, had been informed by other officers and members of the community that Woods was trafficking in drugs and was typically armed. (TRS MSE, p. 10) DeLisle had also been told that Woods' vehicle had various hidden compartments in which he concealed drugs. *Id*.

Sgt. DeLisle and police officer Daniel Johnson went across the road from the McDonald's and observed Woods drive away from restaurant. (TRS MSE, p.12) DeLisle and Johnson both testified that they saw Woods throw a piece of paper onto a public street, namely Ivie Road in front of McDonald's, which DeLisle knew to be a violation of the law. (TRS MSE, pp. 12, 47-48) Both officers testified that the Cadillac had heavily tinted windows. (DeLisle: TRS MSE, p. 13)(Johnson: TRS MSE, p. 47)

The officers stopped Woods' Cadillac based on their observations of the two violations. (TRS MSE, p. 13) After informing Woods of the reason for the stop, Woods ask officers, "You're going to f--- with me over a straw wrapper?" (TRS MSE, p. 14) DeLisle tested the windows and determined that they were within permissible limits for tint. *Id*. Woods provided a valid driver's license as requested, but was unable to produce an insurance card, another violation. *Id*.

As he was speaking with Woods, DeLisle detected a faint odor of marijuana emanating from the vehicle, and asked Woods and his passenger to step out. (TRS MSE, pp. 14-15) When Woods exited the vehicle, DeLisle observed what he recognized as being a fake "iPhone" located inside the driver's door pocket. (TRS MSE, p. 15) On two

---
[1] TRS MSE: Transcript from the hearing on Woods' Motion to Suppress Evidence held herein.

prior occasions DeLisle has observed fake iPhones and both times the objects turned out to be digital scales, leading DeLisle to believe that the object he observed in Woods' door pocket was digital scales as well. *Id*.

Sgt. DeLisle asked Woods where he was traveling to and he said Kennett, Missouri. (TRS MSE, p. 16) However, the passenger told another officer that they were going to Memphis. *Id*. DeLisle asked Woods if there was anything illegal in the vehicle to which Woods replied, "No." *Id*. DeLisle asked for and received consent to search the vehicle from Woods. *Id*.

Sgt. DeLisle then requested the assistance of a drug detection canine, as he was aware that Woods' vehicle was supposed to contain hidden compartments which he used to conceal illegal items. (TRS MSE, p. 17) DeLisle calculated that it took approximately 20 to 30 minutes for the canine handler and the dog to arrive on scene. (TRS MSE, pp. 18-19) DeLisle then briefed Deputy Bryan Burgess from the Pemiscot County Sheriff's Department who had arrived with his trained narcotics detection dog. (TRS MSE, p. 19)

Deputy Burgess deployed the dog, who alerted to the presence of narcotics inside the vehicle. *Id*. At that time, the officers decided to impound the vehicle and take Woods in for questioning. (TRS MSE, p. 20) DeLisle also testified that he had written tickets to Woods and attempted to explain the court process to him, however Woods became resistant, refusing to listen to the officer and cursed at him. (TRS MSE, p. 20) DeLisle testified that as a result, Woods would have been going downtown to post bond even if the dog had not indicated on the car. *Id*. A search of the impounded vehicle disclosed a compartment located underneath the back seat containing a large amount of drugs and a

pistol. (TRS MSE, p. 23) The drugs were separated out into small packages in a manner consistent with drugs packaged for distribution. (TRS MSE, p. 24)

Sgt. DeLisle and SEMO Drug Task Force Officer Eddie Holloway interviewed Woods. (DeLisle: TRS MSE, p. 20)(Holloway: TRS MSE, p. 73) Prior to that interview DeLisle read Woods the *Miranda* warning from a form, which Woods indicated that he understood. (TRS MSE, p. 21) Woods signed the part of the form which was basically an acknowledgement of his *Miranda* rights. (TRS MSE, p. 22) (Holloway: TRS MSE, p. 74) A second part of the form was a waiver of rights, which Woods refused to sign, although he did agree to speak with the officers. (DeLisle: TRS MSE, p. 22) (Holloway: TRS MSE, p. 75) Woods made incriminating statements however, in response to questions about the gun and drugs located in the vehicle that he was driving. (DeLisle: TRS MSE, p. 23) (Holloway: TRS MSE, p. 75).

Woods was interviewed again on April 11, 2014 at the New Madrid County Sheriff's Department, this time by ATF Special Agent John Taylor in the presence of DEA Special Agent Greg Budt and SEMO Drug Task Force Officer Chris Hensley. (TRS MSE, pp. 86-87) Woods was again advised of his *Miranda* rights and again agreed to speak with investigators, making incriminating responses to questions about the drugs and gun located during the search conducted following the traffic stop. *Id*.

Woods was indicted on June 19, 2014, by a Grand Jury for the Eastern District of Missouri sitting in Cape Girardeau, Missouri and charged with Possession of a Controlled Substance with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), Possession of a

Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).

Woods filed a motion to suppress the evidence and his statements alleging that his vehicle was unlawfully stopped and that he was unlawfully detained. Woods additionally argued that the incriminating statements that he made should be suppressed because Woods did not waive his rights per *Miranda*. A hearing was held on the motion and United States Magistrate Judge Abbie Crites-Leoni recommended that Woods' motion to suppress be denied. (Doc. 52)[2] Woods objected to Judge Crites-Leoni's Report and Recommendation and filed an eight page, handwritten, single spaced pro se memorandum supporting his position (Doc. 55), however, this Court adopted the Report and Recommendation and denied Woods' motion to suppress. (Doc. 62)

Woods decided that he wanted to proceed pro se and this Court permitted him to do so, with the Federal Public Defender being retained as Woods' standby counsel. The drugs and the pistol seized from Woods vehicle were admitted as evidence at Woods' jury trial, as were both statements that he made on different days to different investigators.

At the close of the evidence, the this Court denied Woods' motion for a directed verdict and on March 26, 2015, the jury found him guilty of all three counts of the indictment. (Doc. 102) Woods was later sentenced to aggregate term of 180 months of incarceration to be followed by three years of supervised release as to each count. (Doc. 117)

---

[2] Unless otherwise stated all Documents are from the original criminal case, EDMO Docket Number 1:14CR66 SNLJ.

Woods filed a notice of appeal, and this Court appointed the Federal Public Defender to represent him on appeal. Woods objected to this however and filed a request to proceed pro se on the appeal with the Eight Circuit Court of Appeals (8th Circuit Cause number 15-2837, Doc. 4365311) The Court of Appeals denied Woods' request to proceed pro se (8th Circuit Cause number 15-2837, Doc. 4369318) and the Federal Public Defender filed a brief on Woods behalf.

On appeal, Woods challenged the denial of his motion to suppress evidence, arguing that the officers lacked reasonable suspicion to continue his detention at the traffic stop while waiting for the drug detecting canine, and secondly that the officers violated his rights by questioning him without first obtaining a valid *Miranda* waiver. The Court of Appeals rejected Woods arguments and affirmed the denial of the Motion to Suppress Evidence. (*United States v. Woods*, 829 F.3d 675, (8th Cir. 2016)) Woods subsequently filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255, herein.

## II. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled

to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.* at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989).

**Ineffective Assistance of Counsel Claims – Standard**.

In order to prevail on a theory of ineffective assistance of counsel, the Movant must demonstrate two separate things; that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient), and secondly that

7

counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001) While counsel has a duty to make reasonable investigations and decisions, "in determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'". *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 689)

In order to prove that counsel's error was prejudicial, Movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome". *Id*. However, the reviewing court need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103 F.3d 710, 712 (8th Cir. 1997)

Counsel cannot be considered to be ineffective for failing to raise issues upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983) Nor is an attorney under an obligation to pursue an unpromising investigation. *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988)

**Prosecutorial Misconduct Claims – Standard**.

As a general rule, prosecutorial misconduct does not merit habeas corpus relief unless the misconduct infected the trial with enough unfairness to render the petitioner's conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir.

2002) A two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial. Even if one or more of the comments was improper, reversal is appropriate only when we determine that the jury verdict reasonably could have been affected by the improper comment or conduct. *Graves v. Ault*, 614 F.3d 501, 507-08 (8th Cir. 2010)

## III. DISCUSSION

**A. District Court Did Not Err in Appointing Counsel on Appeal**.

Woods alleges in his first ground that this Court erred in appointing the Federal Public Defender to represent him on appeal. Several things are wrong with this contention. First, a claim of error by the trial court is not cognizable in a Section 2255 Petition, secondly, Woods has no right to proceed pro se on appeal, and finally, Woods disagreement about what strategy to pursue in the motion to suppress does not constitute a conflict of interest.

Woods' claim that the District Court erred is not cognizable because it could have been raised on direct appeal. Section 2255 litigation is not a substitute for direct appeal, and matters which could have been raised on appeal, but were not should not be considered on a 2255. *United States v. Samuelson*, 722 F.2d 425, 427 (8th Cir. 1983). This exclusion includes not only claims of trial error, but all other claims that could be raised on direct appeal. *Id*.

Woods has no constitutional right to self-representation on appeal, and a denial of the right to proceed pro se on appeal does not violate due process or equal protection. *Martinez v. Court of Appeal of California*, 120 S.Ct. 684, 687 (2000). Thus this Court did not violated Woods' rights by appointing the Federal Public Defender, nor did the Court of Appeals violate his rights by denying Woods' motion to proceed with the appeal pro se.

Woods does not establish a prima facie showing that there was a conflict of interest with his court appointed attorney. In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties. *Zuck v. Alabama*, 588 F.2d 436, 440 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979). Whether an actual conflict exists must be evaluated on the specific facts of each case. *Covey v. United States*, 377 F.3d 903, 907 (8th Cir. 2004); Woods' alleged "conflict of interest" with the Federal Public Defender was clearly a disagreement about trial strategy, and he has not demonstrated that this "adversely affected his lawyer's performance" where he is entitled to relief. *Covey*, 377 F.3d at 908. This is particularly true where Woods' argument that he was illegally stopped, searched and coerced into confessing was rejected by the Courts.

**II. Recordings of Woods Confession Were Admitted at the Suppression Hearing.**

Woods argues for his second ground that his attorney was ineffective for failing to use portions of his recorded confession to impeach the officers' testimonies. Specifically, Woods claims that counsel allowed the recording to be admitted without being played, did not impeach Sgt. DeLisle's testimony that Wood's "never told him why" he refused

to sign a *Miranda* waiver form, and did not play portions of the recording which Woods claims shows that he was coerced or tricked into confessing.[3]

During the government's case, both during the suppression hearing as well as at trial the government did not seek to play the recordings in their entirety, only the portions that were believed to be relevant to the issues at hand. Contrary to what Woods asserts however, this Court did receive the entire recordings into evidence at the suppression hearing and indicated an intention to listen to both of them prior to deciding the case.

> Court: I would imagine in reviewing the evidence that I will take a look at both of the recordings. Knowing that, are there any objections from either of the parties?

(TRS MSE p. 79)

Neither party objected to that procedure and this Court admitted both of the recordings into evidence. (TRS MSE p. 80) It is clear from the record that the Magistrate Judge in fact carefully listened to the recordings, as the Report and Recommendation indicates that she considered the pleadings, "as well as all exhibits admitted into evidence." (Doc 52, p.1) In a footnote to the Report, the Court also noted:

> The Government submitted and the undersigned reviewed video and audio-recordings of the interview (Gov't. Ex. #2 and #3 respectively). The beginning of the video-recording was not stationary until after Woods signed the "Miranda Warning" section of the form. The remainder of the recordings is focused on Woods. The audio-recording lasts less than thirty-five minutes and includes the advice of rights, the interview, and processing of Woods."

(Doc. 52, FN 2, p.5)

---

[3] Woods' argument in this respect completely ignores the fact that he was interviewed a second time by ATF Agent John Taylor two days later, advised of his Miranda Rights, waived those rights and gave a second full and complete confession. See Doc. 52, p. 15. Even had the first confession been suppressed, the ultimate result at trial would not have changed. Woods is apparently not contesting the admission of the evidence of his second confession.

11

The Court also incorporated a number of statements that Woods made on the recordings into her report, for instance when officers were asking Woods if he wanted to talk or cooperate, he would make statements like; "talk about what?" or "help myself how?" (Doc.52, p. 14) Under the circumstances Woods cannot say that the Magistrate Judge did not have the entirety of the recordings before her, prior to making a decision on the suppression issues.

Woods' attorney cross examined both Sgt. DeLisle and TFO Holloway about the waiver of rights, and asked Holloway about statements that he made in an effort to convince Woods to cooperate and give up his source for narcotics. (TRS MSE pp. 41-43, 82-85)

Woods also objected to the Report and filed an eight page handwritten, single-spaced memorandum setting out in great detail all of what Woods perceived to be inconsistencies in the testimony. (Doc. # 55) Woods is really not complaining that his theory of the defense was not presented to the Court, as it clearly was throughout the case. Woods' real problem seems to be that the Court, and later the Jury, did not accept his point of view. As such, Woods is actually attacking the credibility of the witnesses. Typically, credibility determinations are "virtually unassailable on appeal". *United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008), *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010). Since the Court found the witnesses to be credible, and found that Woods' rights were not violated, there is really no issue in terms of his attorney being ineffective. Even had Woods' attorney been more vigorous, or taken a slightly different tact in the argument, it would not have changed the outcome, and

Woods has not suffered any prejudice in this respect. In fact even if the first confession would have been suppressed there is nothing to indicate that the second one would not have been more than adequate, in conjunction with the pistol and drugs recovered from Woods' car to secure a conviction.

**III. Presentation of Relevant Portions of Interviews Was Not Prosecutorial Misconduct**.

Woods alleges that the government committed misconduct by only using partial excerpts of the transcripts to prevent the Court from being made aware of the "misconduct by the officers – such as threats, intimidation, and promises of leniency..." (Doc. 141, p.4)

This has been thoroughly debunked at point two above and the record is clear that the government submitted all of the recordings to the Court without limitation or objection, and that the Court heard the same and found no evidence of wrongdoing on the part of the officers.

Woods also complains in his 2255 Motion that the whole recording was not played at the trial, but this is also without merit, as the record reflects that the first part of the tape, the only section of the tape which Woods wanted played, was in fact played at the trial. (TRS Trial vol I, pp. 6-7, 71)

**IV. Government Did Not Allow Officers to Make False Statements During Testimony**.

Woods' allegations in ground four are simply an attack on the credibility of the officers. There is no evidence to indicate that the officers were untruthful, and Woods' argument is based upon his interpretation of the recordings which both the Magistrate

13

Judge and the Jury listened to and decided to believe the officer's version of the events. As discussed at length above these arguments actually go to the sufficiency of the evidence and the credibility of the witnesses, which are not properly raised in Section 2255 litigation.

**V-VI. Allowing Case Agent to Remain at Counsel Table was Not Improper.**

Woods complains that the government's request to allow the AFT case agent to remain in the courtroom constitutes both prosecutorial misconduct (Ground Five) and ineffective assistance of counsel (Ground Six). The general rule of law is that sequestration of most witnesses is mandatory when requested, but the district court has a wide degree of latitude in that respect. *United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012). Fed.R.Evid. 615, which governs witness sequestration, does not authorize excluding a party's designated representative. *Id*. The decision to allow an Agent to sit at counsel table is left to the trial court's discretion. *Id*.

Woods states that Agent Taylor was allowed to sit through the testimonies of the government's other witnesses, "whom were supposed to make similar testimonies as himself" before he testified. (Doc 141, pp. 4-5) Woods claims that this constituted a "major error" on the Magistrate Judge's part, prosecutorial misconduct, and ineffective assistance of counsel. Woods claims that this action violated his rights to due process and a fair trial. (Doc 141, p. 5)

Woods fails to explain however, just how having Agent Taylor present at the counsel table while the case was presented prejudiced him in any way. In truth, Taylor did not get involved in the case until after the traffic stop, the detention, the vehicle

14

search and Woods' initial interview and confession had taken place. It is difficult to see how hearing the other officers testified about events to which Taylor was not a witness, and would not testify about himself could possibly prejudice Woods. Taylor's testimony was solely about his interview of Woods which occurred a couple of days after the arrest, and Woods does not appear to contest the validity of that confession in his Section 2255 Motion.

**VII. Counsel Was Not Ineffective for Failing to Request a Substitution of Judge.**

Woods claims ineffective assistance of counsel in that his attorney failed to move to substitute the Magistrate Judge whom Woods believed unfairly decided his case because she was formerly a Federal Prosecutor. Title 28. United States Code, Section 455(a) requires judicial recusal in a proceeding where the Judge's impartiality might reasonably be questioned. The operative issue is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case. *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise. *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006). Woods makes unsubstantiated allegations that his attorney told him the Magistrate Judge was not going to give him a fair hearing, but provides no evidence that would make one believe that was really the case. Woods again points out his concern about the officers not being impeached or the recordings being played in connection with this ground. (Doc 141 p. 5) Judicial impartiality does not mean gullibility, and disinterestedness does not mean child-like innocence. *Liteky v. United States*, 114 S.Ct. 1147, 1155 (1994). The fact that the

15

Magistrate Judge did not buy into Woods' arguments, does not mean that she was unfair to him in any way.

The greatest evidence that the Magistrate Judge fairly and impartially decided the issues in Woods' case is found in the fact that the District Judge who reviewed the matter adopted the Report and Recommendation, the Jurors heard the evidence at trial and apparently found the officers credible, and the Eighth Circuit Court of Appeals found no error in either of those proceedings.

**VIII. Counsel Not Ineffective For Failing to Investigate Claim of False Arrest.**

Woods' claims that his attorney was ineffective in failing to investigate his claim of false arrest. Woods points out what he perceives to be inconsistencies in the officers testimonies, laments the fact that no traffic tickets were issued, or that he was not arrested for disorderly conduct. (Doc # 141, pp. 5-6)

Woods attorney vigorously argued that the traffic stop and detention was improper, and that the evidence from the resulting search and interview should have been suppressed. Woods has nothing to argue about in this respect. Woods' argument once again is basically that the officers were not credible when they testified about his actions on the day of the arrest. As there is nothing to support this allegation, and no evidence undermining the credibility of the witnesses, this ground is dismissed without the necessity of an evidentiary hearing.

**IX. Woods Rights Were Not Violated by the Appointment of Counsel.**

Woods' final stated ground for relief is that this Court erred in appointing an attorney to represent him on appeal, which prevented him from raising all the issues that

he felt needed to be addressed. While Woods does not specifically say what those issues would have been, from the tenor of his arguments throughout his Section 2255 motion, it appears likely that his issues revolve around the credibility of the witnesses.

As stated earlier, Woods has no constitutional right to self-representation on appeal, and a denial of the right to proceed pro se on appeal does not violate due process or equal protection. *Martinez v. Court of Appeal of California*, 120 S.Ct. 684, 687 (2000). Thus this Court did not violated Woods' rights by appointing the Federal Public Defender, nor did the Court of Appeals violate his rights by denying Woods' motion to proceed with the appeal pro se.

Additionally, Woods does not articulate what specific arguments that he would have made but for having an attorney appointed to represent him. To the extent that those arguments would have involved attacking the credibility of the witnesses, they simply would not have prevailed on appeal. Woods has not demonstrated that he was in any way prejudiced by not being allowed to proceed pro se, and this ground is dismissed without the necessity of an evidentiary hearing as well.

## **CONCLUSION**

For the foregoing reasons, this Court denies all of the claims contained in Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Woods has not made a substantial showing of the denial of a federal constitutional right.

Dated this 11th day of September, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE